**IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA SOUTHERN DIVISION**

| | | |
|---|---|---|
| **KIMBERLY WESTFALL** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CASE NO: 2:26-cv-00690** |
| | ) | |
| **VNH ENTERPRISES, INC. d/b/a PEPPERTREE STEAKS N' WINES; and KATHY HOLMES LAICHE** | ) ) ) | |
| | ) | |
| **Defendant.** | ) | |

# COMPLAINT

Plaintiff Kimberly Westfall states the following as her Complaint against VNH Enterprises, Inc. d/b/a Peppertree Steaks n' Wines ("Peppertree") and Kathy Holmes Laiche.

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, Federal Question Jurisdiction. Plaintiff's claims under the Fair Labor Standards Act ("FLSA"). 29 U.S.C. § 201, et. seq., conter jurisdiction on the Court.

2. Peppertree's annual sales exceed $500,000, and it employes more than two persons in commerce, so the FLSA applies to wages for hourly workers. 29 U.S.C. § 203(s)(1)(A)(i)-(ii).

## II. PARTIES

3. Kimberly Westfall is an individual over nineteen (19) years old, residing in Autauga County, Alabama.

4. Peppertree is an Alabama Corporation with its principal place of business in Montgomery, Alabama. Peppertree has a location in Auburn, Alabama, as well.

5. Kathy Holmes Laiche was, at all times pertinent, the President of Peppertree. Kathy Holmes Laiche was Kathy Holmes until her marriage in April of 2025.

## III. FACTS

6. Kimberly Westfall has been employed by Peppertree as its catering manager since March of 2022.

7. The job of catering manager at Peppertree involves planning catered events, both at the restaurant, and for events outside the restaurant. Sometimes she would perform work at the restaurant, and other times she would work at the site of an event, or from home. It was Ms. Westfall's job to be a liaison with customers for catered events. She would price the bookings, make sure they were staffed, and make sure there was adequate food and beverage present, per agreements with customers.

8. Ms. Westfall's standard hourly rate was $18.00 per hour when she began work at Peppertree, and was raised to $23.00 per hour in August of 2025.

### A. The Law Relating to Payment for All Hours.

9. The FLSA governs how hourly employees are to be paid. In particular the FLSA governs how employees are to be paid for hours worked over forty. See, 29 U.S.C. § 206 (employees must be paid at least $7.25 per hour); 29 U.S.C. § 207 (employees must be paid 1.5 times the "regular rate at which he is employed" for all hours over forty).

10. The "regular rate" referred to in the above quoted section is typically referred to as the Regular Rate of Pay or "RROP", and it is a defined term under the FLSA.

11. RROP is defined as "all remuneration for employment paid to, or on behalf of, the employee," subject to certain exceptions not applicable to this case. 29 U.S.C. § 207 (e).

**B. <u>Facts Relating to the Liability of Kathy Holmes Laiche.</u>**

12. Kathy Holmes Laiche, at all times pertinent hereto, dominated the operation of Peppertree as it relates to pay and overtime.

13. Ms. Holmes Laiche sets policy for the payment of overtime, and is the person who changed Ms. Westfall's hours.

14. Ms. Holmes Laiche has, at all times pertinent hereto, been in the position to set pay policies and practices, and at all times directed the pay of Ms. Westfall and the other hourly employees at Peppertree.

15. Ms. Holmes is also the person who made and implemented the decision to substitute PTO hours for overtime worked, as explained below.

**C. <u>Peppertree Improperly Reduced Ms. Westfall's Hours.</u>**

16. For the purposes of avoiding the payment of overtime, Peppertree improperly reduced the number of hours Ms. Westfall worked in its payroll time system.

17. Per instruction from her supervisor, Ms. Westfall clocked in and clocked out for each shift. This was supposed to create an accurate record of hours from which Ms. Westfall would be paid. However, before the hours were posted to create her pay, Peppertree, more specifically Peppertree's President, Kathy Holmes Laiche, would reduce the number of hours worked, thereby reducing Ms. Westfall's overall pay by reducing the hours paid.

18. For example, below is a picture Ms. Westfall took of the screen on the time and pay system of Peppertree on March 21, 2025.



| Name | Clocked In | Clocked Out | Duration |
|---|---|---|---|
| Kim W. | 7:22 a.m. 2025-03-21 | 12:25 p.m. 2025-03-21 | 5 hrs 2 min |
| Kim W. | 6:47 a.m. 2025-03-20 | 7:01 p.m. 2025-03-20 | 12 hrs 13 min |
| Kim W. | 7:57 a.m. 2025-03-19 | 6:58 p.m. 2025-03-19 | 11 hrs 0 min |
| Kim W. | 7:10 a.m. 2025-03-18 | 5:36 p.m. 2025-03-18 | 10 hrs 26 min |
| Kim W. | 8:04 a.m. 2025-03-17 | 5:59 p.m. 2025-03-17 | 9 hrs 54 min |
| Kim W. | 7:14 a.m. 2025-03-14 | 11:11 a.m. 2025-03-14 | 3 hrs 57 min |
| Kim W. | 12:21 p.m. 2025-03-12 | 3:00 p.m. 2025-03-12 | 2 hrs 39 min |
| Kim W. | 11:25 a.m. 2025-03-11 | 3:00 p.m. 2025-03-11 | 3 hrs 34 min |
| Kim W. | 6:32 a.m. 2025-03-08 | 1:17 p.m. 2025-03-08 | 6 hrs 44 min |
| Kim W. | 8:07 a.m. 2025-03-07 | 6:19 p.m. 2025-03-07 | 10 hrs 12 min |



19. This shows that she clocked in at 6:47 a.m. on March 20, 2025, and clocked out at 7:01 p.m., for 12 hours and 13 minutes worked.

20. Below is a picture from the same system taken on March 29, 2025.





| Name | Clocked In | Clocked Out | Duration |
|---|---|---|---|
| Kim W. | 10:06 AM 3/26/25 | 6:01 PM 3/26/25 | 7 hrs 55 min |
| Kim W. | 7:29 AM 3/26/25 | 8:52 AM 3/26/25 | 1 hr 22 min |
| Kim W. | 5:15 PM 3/25/25 | 6:13 PM 3/25/25 | 58 min |
| Kim W. | 7:53 AM 3/25/25 | 5:09 PM 3/25/25 | 9 hrs 15 min |
| Kim W. | 7:22 AM 3/21/25 | 12:25 PM 3/21/25 | 5 hrs 2 min |
| Kim W. | 6:47 AM 3/20/25 | 6:00 PM 3/20/25 | 11 hrs 12 min |
| Kim W. | 7:57 AM | 6:58 PM | 11 hrs 0 min |

21. Peppertree changed her time.

22. Below is a picture of Peppertree's record of Ms. Westfall's clock in and clock out times from which it calculated her pay for the week of March 17-21, 2025.

| | | | | |
|---|---|---|---|---|
| Kim Westfall | 21-Mar-2025 7:22 am | 21-Mar-2025 12:25 pm | 5 hr 2 min 46 sec | Details |
| Kim Westfall | 20-Mar-2025 6:47 am | 20-Mar-2025 6:00 pm | 11 hr 12 min 33 sec | Details |
| Kim Westfall | 19-Mar-2025 7:57 am | 19-Mar-2025 6:58 pm | 11 hr 54 sec | Details |
| Kim Westfall | 18-Mar-2025 7:10 am | 18-Mar-2025 5:36 pm | 10 hr 26 min 47 sec | Details |
| Kim Westfall | 17-Mar-2025 8:04 am | 17-Mar-2025 5:59 pm | 9 hr 54 min 42 sec | Details |

23. This record shows that Peppertree changed, without authority from Ms. Westfall, her clock out time from 7:01 p.m. to 6:00 p.m., thereby reducing her paid hours for the day from 12 hours and 13 minutes to 11 hours and 13 minutes (rounded to the nearest minute). This is a one (1) hour and one (1) minute reduction.

24. The result of this time change by Peppertree is that when Ms. Westfall was paid for the week of March 17-21, she was paid for 40 hours of straight time, and 7.63 hours of overtime.

25. However, based upon the system as it existed before any changes were made, Ms. Westfall worked 48.58 hours in the workweek.

26. The proper calculation for just this error would have been total compensation paid of $898.20, divided by hours worked, 48.58, establishing a RROP of $18.49 creating a proper overtime rate of $27.74. Ms. Westfall worked 8.58 hours overtime, for which she should have been paid $238.00, meaning, she should have been paid $720.00 for her straight time, plus the $238.00

of overtime, for a total of $958.00, meaning she was underpaid $59.50 for this week as the result of the unlawful changing of her hours by Peppertree.

27. This under-counting of hours was not an isolated incident. It happened over and over during the time Ms. Westfall worked at Peppertree, resulting in monetary loss of each time.

**D. <u>Peppertree Incorrectly Gave Ms. Westfall PTO for Overtime Worked Instead of Paying Her For It.</u>**

28. In addition to failing to properly credit Ms. Westfall for all of her hours worked, Peppertree routinely had Ms. Westfall work from home, and instead of paying her for overtime worked, added to her Paid Time Off ("PTO") balance.

29. For example, Ms. Westfall's November 26, 2025, paycheck paid her $1,265.00 for 50 hours of work. If that was all she had worked that week, she would still have been underpaid. Her pay for the week would calculate to a RROP of $25.30 (total compensation/hours worked). She should have been paid 40 hours at $23.00 ($920.00), plus ten (10) hours at $37.95 ($379.50), for a total of $1,299.50, if she had only worked the fifty hours. Even using Peppertree's numbers, she was underpaid $34.50.

30. However, Peppertree's own records show that she actually worked 56.63 hours, shorting Ms. Westfall 6.63 hours. Peppertree's record of hours worked for this week shows:

| | | | | |
|---|---|---|---|---|
| Kim Westfall | 21-Nov-2025 5:49 am | 21-Nov-2025 1:34 pm | 7 hr 44 min 58 sec | Details |
| Kim Westfall | 20-Nov-2025 5:48 am | 20-Nov-2025 7:01 pm | 13 hr 12 min 36 sec | Details |
| Kim Westfall | 19-Nov-2025 8:09 am | 19-Nov-2025 7:11 pm | 11 hr 1 min 46 sec | Details |
| Kim Westfall | 19-Nov-2025 5:46 am | 19-Nov-2025 7:35 am | 1 hr 49 min 16 sec | Details |
| Kim Westfall | 18-Nov-2025 6:15 am | 18-Nov-2025 6:27 pm | 12 hr 12 min 39 sec | Details |
| Kim Westfall | 17-Nov-2025 7:28 am | 17-Nov-2025 6:07 pm | 10 hr 39 min 7 sec | Details |

31. Recalculated, Ms. Westfall's RROP becomes $22.34; and her overtime rate becomes $33.51, meaning she should have been paid $920.00 for her first 40 hours ($23.00 per hour), and then $557.27 for her 16.63 hours of overtime for a total of $1,477.27. This is an underpayment of $212.27.

32. However, Ms. Westfall worked an additional twenty hours that week at home for which she was "compensated" in the form of being given twenty hours of PTO, as opposed to being paid.

33. "[A] private employer may not award compensatory time off to employees for FLSA overtime hour worked in lieu of cash compensation." U.S. Department of Labor Wage and Hour Division, opinion September 17, 1992, 1992 DOLWH Lexis 28.

34. For the week of November 17-21, 2025, paid on November 26, 2025, instead of being paid for twenty hours of overtime worked Ms. Westfall was given twenty (20) hours of PTO. This is impermissible.

35. Calculated properly for: (1) all hours; at (2) proper RROP; excluding payment for commission, which is discussed below, the proper calculation is

a. Total pay ($1,265.00/hours worked (76.68) = RROP of $16.50 per hour

b. Additional pay for each overtime hour worked = $8.25

c. Overtime hours to be paid at $24.75

d. First 40 hours of compensation at $23.00 = $920.00

e. 36.68 overtime hours at proper overtime rate ($24.75) = $907.83

f. Total pay, excluding commissions discussed below. would have been $1,827.83, meaning Ms. Westfall was underpaid $562.83 for the week for November 18-22, 2025; excluding commissions, discussed below.

**E. <u>Commissions Were Improperly Excluded From Regular Rate of Pay Calculations, Leading to Underpayment.</u>**

36. The third way pay was miscalculated for Ms. Westfall was that commissions were excluded from the calculations entirely.

37. The law under the FLSA is quite clear

> Commissions (whether based on a percentage of total sales or of sales in excess of a specified amount, or on some other formula) are payments for hours worked and must be included in the regular rate. This is true regardless of whether the commission is the sole source of the employee's compensation or is paid in addition to a guaranteed salary or hourly rate, or on some other basis, and regardless of the method, frequency, or regularity of computing, allocating and paying the commission. It does not matter whether the commission earnings are computed daily, weekly, biweekly, semimonthly, monthly, or at some other interval. The fact that the commission is paid on a basis other than weekly, and that payment is delayed for a time past the employee's normal pay day or pay period, does not excuse the employer from including this payment in the employee's regular rate.

29 C.F.R. § 778.117.

38. Using the November 26, 2025 pay date as a continuing example, Ms. Westfall was paid $175.00 in commissions. This means that, when truly done correctly, Ms. Westfall's RROP

for the week should have been $18.78 ($1,440 total pay/$76.68), and she should have been compensated at $28.17 for each hour over forty (40).

39. The proper calculation, all tolled, for the week should have been forty (40) hours at $23.00, for $920.00, plus $1,033.28 for her 36.68 overtime hours, for a total payment of $1,953.28, or an underpayment of $513.28.

40. These miscalculations were not particular to the weeks referenced herein, but happened throughout the statutory period. Sometimes the shortage was caused by the company deleting Ms. Westfall's hours; sometimes it was caused by failing to properly calculate RROP on overtime worked; and sometimes it was caused by failing to pay her for overtime worked, and giving her PTO instead. Sometimes it was a combination of some, or all of these failures. Either way, in the last three years Ms. Westfall has been consistently underpaid.

## COUNT I
## (Claim Under the Fair Labor Standards Act)

41. Plaintiff incorporates by reference, as if set forth fully herein, paragraphs 1-40 above.

42. Plaintiff is entitled to the protections of the FLSA.

43. Defendant is an employer covered by the FLSA

44. Under the FLSA, employees are to be paid at least $7.25 per hour when working for their employer, 29 U.S.C.; and paid 1.5 times the employee's regular hourly rate for all hours worked in excess of 40 in a workweek. 29 U.S.C. § 207(a).

45. Peppertree has failed to meet its FLSA obligations as set forth above, in the following ways:

a. Failing to pay Ms. Westfall for all hours worked.

b. Failing to properly include all hours worked in overtime pay.

c. Failure to include commissions into the Regular Rate of Pay for overtime pay.

d. Wrongfully crediting Ms. Westfall with PTO rather than paying her for hours of work.

46. The FLSA provides for a civil cause of action under 29 U.S.C. § 216(b) against any employer violating 29 U.S.C. §§ 206 and 207.

**WHEREFORE**, pursuant to 29 U.S.C. § 216 (b), Plaintiff requests the following relief:

a. Payment of all wages due and owing Ms. Westfall from three years prior to the filing of this action to the present.

b. An additional amount equal to unpaid wages and overtime as liquidated damages.

c. The costs of this action, including a reasonable attorneys' fee.

d. A declaratory judgment that Defendant's wage practices complained of herein violate the FLSA, 29 U.S.C. § 516 et. seq.

**COUNT II**
**(Breach of Contract)**

47. Plaintiff incorporates by reference, as if set forth fully herein, paragraphs 1-46 above.

48. To the extent the FLSA does not apply to Ms. Westfall's claims of underpayment, Peppertree breached its contract to pay her: (1) for all hours worked; (2) at 1.5 times her RROP for overtime worked; and (3) to pay her for time worked instead of giving her PTO.

49. Ms. Westfall worked the hours, satisfying her contractual obligation, but Peppertree did not pay her according to their employment agreement.

**WHEREFORE**, premises considered, Plaintiff demands damages for unpaid and underpaid work time in an amount to be determined by struck jury.

**PLAINTIFFS DEMAND TRIAL BY STRUCK JURY OF ALL CLAIMS SO TRIABLE.**

Respectfully submitted,

/s/ Brian M. Clark
Brian Clark
Attorney for Plaintiffs

**OF COUNSEL:**
Wiggins Childs Pantazis Fisher & Goldfarb, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
Telephone: (205) 314-0500
Facsimile: (205) 254-1500
Email: bclark@wigginschilds.com

**SERVE EACH DEFENDANT AT THE FOLLOWING ADDRESS:**

VNH Enterprises, Inc.
8101 Vaughn Road
Montgomery, AL 36116

Kathy Holmes Laiche
467 Broadwick St.
Montgomery, AL 36116